Counsel, go ahead. Good morning. May it please the court, Nadim Makada, appearing for the petitioner, Leonardo Maldonado. Your Honors, this case presents with both a unique and tragic fact pattern. In writing and revising the laws of immigration many times, I cannot believe Congress ever envisioned this type of fact pattern. Counsel, I've got a big problem with the case. Let me tell you what it is, so you can address it directly. Okay. It's a case where I think anybody would really like to give a break to these people. However, the son is 36 years old. The statute says child means an unmarried person under 21 years of age. He's not under 21 years of age. Functionally, in terms of how much they care for him, they give him a whole lot more care than they would if he was six years of age because of his tragic physical situation. But then I look at what the Supreme Court said in INS v. Hector. And in that case, the board said that the niece wasn't the child. There was a niece instead of a person who was a child but over 21. But the Third Circuit held that what mattered was whether Hector's relationship with her nieces was the functional equivalent of a parent-child relationship. And then the Supreme Court said that Congress set forth what the Supreme Court called unusually detailed and unyielding provisions defining each class of and they rejected the functional definition of child for the niece who had always been raised as their child. That makes me feel like we can't give your guy a break because he's over 21, even though functionally he's like a child because Hector says we can't. Long question, but I have just laid out my thinking for you so that you could deal with it. What's there? I'll start by first addressing the Hector decision. The Hector decision rejected the Third Circuit's flexible approach. And the reasoning behind functional approach, the reasoning behind the Supreme Court decision is if you look at the arguments of the justices, it was basically a slippery slope argument. If you expand this definition of relationship to an aunt, or excuse me, a niece or a nephew or a grandchild, then why not to a neighbor's son or a friend's son that you're raising? I think the basis of the reasoning is to prevent that. If they had allowed that functional approach to the Third Circuit, then that would have opened up just the gates to definition of a relationship. It would mean you could classify your niece as a child. It would mean you classify your grandchild as a child. It happens all the time. I mean, I happen to know a girl who had a kid, and her grandmother raised it, and her grandmother raised her. Barely knew her parents. It was her grandmother that raised her. Happens all the time. And that's why we have a solution for this. For instance, in Hector and Moreno, we're dealing with a niece and a grandchild. But at the time your client went into the coma, he was a child. And could there be an exception here that would be narrow enough so that we would not be going against Hector and Moreno, but saying if at the time of the disability, your grandchild, and it continues on, that that would come within the statute? Would that be an argument that you would feel would be appropriate to make? Yes. And I call this the stasis theory. And I'm actually going to address that. Under that theory, Mario remains the age of 17, which is the age at the time of the accident, the time he went into coma. And if the court takes that approach, he is 17 years old. If you look at the medical records in this case, the medical definitions, he has not aged. He's basically a coma, basically time stands still for someone in a coma. I mean, he may, the only way his biological age is over 21 is you look at his date of birth. But medically speaking, he is still that age. Now, the court could take that approach, and I'm sure there will be cert filed on that, and this matter would not end here. But it is a functional approach. It's not strict interpretatism. It is not, you know, the recent appointees of the Supreme Court would not agree with this type of approach, but it is an approach that the court could take in this matter. The Attorney General has discretion to administratively stay removal. Yes. Doesn't he? Yes. Are they eligible for that? No. I have tried that. And the government, the government has taken sort of a callous approach to this. Basically they have told us, well, he's a goner anyway, and that they would be doing a favor to these parents by deporting them to Mexico because then they could, quote, get on with their lives. I understand that's your characterization. Do you have anything in writing that ascribes that callous opposition to the government? I have an oral, all we have is an oral rejection of our motion to administratively close that was stated at the last immigration hearing in 2003, I believe. Yes. The immigration judge temporarily stayed proceedings to allow us to make a motion to administratively close that. And then when that was the That was orally denied? There was nothing in writing? No. No. The immigration attorney told the I.J. and myself at the same time, and thus we proceeded with the hearing. And who was it that told you that the kid was going to die anyway? Which I.N.S. attorney? Yeah. It was I want to be real careful here. Yeah. You know, I'm Is that your take on their response, or did they actually say that? Those exact words, I can't, no, I'm not comfortable stating his name. He is actually a friend of mine as well. And I've known him for many, many years. And it was a, after the motion to administratively close was denied, I basically called him up to try to argue this with him, because he has some, he's one of the, he's one of the supervisors there now. So that's basically what he told me, the response. I don't want to get a burn, friend. Yeah. I just have known him for too many years to give his name. If you would like to hold on to some time, it might be useful. Yeah. I'd like to save the rest of the time for rebuttal, then. Thank you. Counsel. Good morning, Your Honor. May it please the Court. My name is Jeffrey Bernstein, and I represent the Attorney General of the United States. This is the model case for the adage, hard cases make bad law. You've got a real risk that the Ninth Circuit is going to make some law that is kind of surprising under Hector, because the facts are so bad for you. What do we do about this? I'm sorry, Your Honor? What do we do about this? Well, in terms of the legal matter before you, you apply Hector. Well, Hector involved a niece. Here we have a child. And if we said a niece and a grandchild, it would open up the floodgates. But if the child is a minor at the time the coma occurs, we wouldn't be opening up the floodgates. It would be a very narrow ruling. I think you would be opening up the floodgates. Why? Number one, we're not talking about the child in the traditional dictionary sense. The question is whether or not an individual meets the statutory definition of a child. And as the Supreme Court in Hector said, the Congress has drawn the line, has defined it very specifically, and there's no wiggle room. With all due respect to my colleague, they did not engage in a discussion which culminated in a slippery slope basis. They were interpreting the statute. And here the provisions of the statute that they were interpreting were even less specific than the statutory provision that you have to interpret. The provision that you have to interpret says a child is an individual under 21 years of age. Does the statute say at the time? It defines child for ‑‑ Start with a yes or no. I can't answer that in a yes or no. The statute does not use the words at the time, does it? That particular provision does not. But the reason it does not, if I may answer, Your Honor, is because this is a catch‑all provision. It applies to defining child throughout the act. And it is clear that an individual must set ‑‑ and I think the board case law says this, and I'm not familiar with your case law on the issue, but I can't imagine that it says anything different, that the qualifying individual ‑‑ That's an interesting assumption to make given where you are. That may well ‑‑ all I can say is I'm not aware of any decision of this Court holding otherwise. They could have gotten relief, I guess, if they had applied during the months between the car accident and his 18th birthday. They weren't in removal proceedings at that time. So they couldn't have gotten relief because there was nothing to get relief from. They were, in fact, paroled in. They came into the country because they were paroled in for humanitarian reasons when the son had the accident. And they're being removed for non‑humanitarian reasons. They're being removed because they don't have status in the country. Your Honor, I'm not ‑‑ What's the level of interest on the part of the department to exercise discretion here? Well, the only thing that I can tell you, Your Honor, is that I spoke to the lawyer who wrote the brief in this case, and she indicated that she had discussions with the service when she was writing the brief, and they indicated that they would certainly entertain a request for humanitarian relief once the administrative order of removal was final. Counsel, I'm not sure I understand what those words mean because I don't know. I've never been a government attorney. When I did insurance defense, sometimes I'd get a case where the law was solidly on our side. We had to win on summary judgment. The facts were so bad that I was quite confident the Alaska Supreme Court would change what the law was so that we would lose. So I would tell my clients to settle, and they did. Is that going to happen here? Well, luckily in this case, Your Honor, we have the Supreme Court decision, which requires you to reach the ‑‑ They can change their minds. They can. We can strike out in a new direction, and they can change their minds. Is the service, if we refer this to mediation or do something like that, is this case going to settle to avoid the risk of bad law, or are we wasting our time, and should we just decide it? Your Honor, the only thing that I can tell you is the answer that I gave to Judge Hawkins is that the attorney who wrote the brief had contact with the service. I heard that, and I didn't know what the words meant. Okay. She spoke to an attorney, I assume an attorney, in the solicitor's office or whatever, the general counsel's office, I presume it was San Francisco, and they said they were not interested in settling this case at this point, but once the order of removal was final, in other words, once the court took action. You mean if you win, then they'll give them a break? No. I interpret that, and it's only my interpretation because I wasn't in the conversation, but I interpret that as meaning if the court affirms the administrative order, then they will entertain a request for humanitarian relief. So if you win, then they'll think about giving them a break? I believe that's what entertain means, yes, in this context. I don't mean to be smart, but, you know. I just don't know what the words mean. That's why I ask. Okay. And with respect to the slippery slope argument, if this court goes against the Supreme Court and finds that there is wiggle room in this statute, then the floodgates will in fact open because every person will be arguing that their relative is a child for some reason. So, I mean, you open the floodgates by rejecting the Supreme Court's opinion that there is no exception, that the statutory terms are clear, unambiguous. How many cases has the Attorney General encountered that involved this fact pattern? This specific fact pattern? I don't know. I mean, obviously, this court has at least two decisions regarding what constitutes a child for purposes of discretion. I wrote one of them. It had to do with the grandchild. Right. But it really is the same argument. I mean, he's arguing that. No, it's not the same argument. Well, I think, if I could continue, he's arguing that he's the functional equivalent, that this individual is the functional equivalent of a child under 21, of an individual under 21. So it's the functional equivalency test, no matter how you look at it. But we don't have to adopt the functional equivalent test. 8 U.S.A. 1101 defines a child. Not a niece, not a grandchild, but a child. If we say at the time of this injury fell within the definition of the statute to be a child, it can be a natural born or an adopted child, not a grandchild, not a niece, why would that open up the floodgates? As I say, the question is not whether or not he's a child in the dictionary sense. It's the question of whether or not he's a child in the statutory sense. When he's a child is the question here. He's a child at the time of the coma. He had the accident. But that is not the period of time that we look at. The question is when an individual applies for cancellation of removal, they must have at that point a qualifying relative. A child can only be a qualifying relative if that child under the definition in the statute is under 21. What's the time they have to be a child again? They have to be a child at the time that the individual applies for cancellation of removal, because they have to have a qualifying relative before they can obtain a ruling on their eligibility for cancellation of removal. And a qualifying relative. The date of the application for cancellation of removal is the critical date for determining whether there's a qualifying relative. I think it probably extends to, it's kind of a moving target in the sense that if, actually I don't know the answer to that question. Certainly at the time they file the application, they must have a qualifying relative. I was thinking that perhaps if the child ages out while it's in the administrative process, that would be problematic. But that's probably not the case. So, yeah, let's stick with that, that they've got to be a child at the time the application is filed. Because, again, they have to have a qualifying relative, and they can only have a qualifying relative for purposes of a child if the child is under the age of 21. Because if the individual is not under the age of 21, then this gatekeeper provision for this statute can't be satisfied. Just out of curiosity, how long does it take between an application and a decision? Your Honor, I don't know. It varies. I mean, obviously, it's an administrative process. I don't know if it's weeks, months, or years. Your Honor, I don't work for the service. So it's really beyond my experience and expertise to give you an answer to that question. And I apologize. I'm happy to give the San Francisco office a call and ask them if, Your Honor. We'll let you know if we need anything like that. All right. Thank you, counsel. Thank you, Your Honor. In my remaining, excuse me. I'm going to first address your last question to government counsel. When you asked how long an application takes, normally an application takes about two to four years. However, we all have cases that are taken nine years, ten years. I was in court the other day. There was a case from 16 years ago. You mean you could apply because your 16-year-old needs your care as a parent and he's in his 20s by the time they decide? Oh, easily, yes. The way the they've tried to speed up things, added judges. It's just the way the process works. Sometimes cases go, an issue goes up to the BIA, comes back down to the immigration court. Who's the decision maker on administrative withholding of removal? The immigration judge. Would it be an IJ, not the district director? No, it would be an IJ, yeah. That's who the application goes to? For a cancellation removal? No, no, no. For administrative withholding of removal. Oh, you mean the stay? Yes. Yeah, that goes to the district director. But the way that works is, yes, we had this discussion. They will entertain a stay of removal. They will entertain a stay of removal when, if the court rules against us, we show up at 630 Sampson Street, fifth floor, with our suitcases in hand, turn our clients in, at which point they will be arrested, and then they will either be, if they decide to exercise their stay of removal, then they will be released. That's how that works. There's no process like they'll let you know in advance. And as a practitioner, we've all learned that that just never happens. Once they're in lockup, they're gone. So to me, that's not really a remedy. Now, just to address the full question. What happens is you literally show up with suitcases and they put you in jail? Yes. And then you say, give me a break, and they say, I guess not. No, then he goes and discusses it with his supervisor, and the supervisor says, and then he comes back and says, my supervisor rejected it. It's happened to me more than once, Your Honor. I'm sorry, my time is up. If they did give you a break, you'd be after a while in jail? No, it could be that same day. It could be released that evening. What would happen to the son? As I understand it, he's in home care now. What would happen to him during that period? That he's in lockup. Would the son be in lockup too? No, he'd be at home. I would think. My time is up, so I don't want to.  Thanks. Thank you, Your Honor. Thank you. If I ask the government one more question. I think we have one more question for the government. If you're telling me how rigid I was going to be on time, do I have 20 minutes to answer this question? No. I'm just thinking, you deport these people because they're illegal aliens and the statute says what it says. The kid is hooked up to tubes. He's not a kid, he's 36. He's hooked up to tubes at their house where they're giving him home care, basically keeping him alive. Have I got that right so far? Your Honor, I have no idea about the facts of this case. I thought he was in home care now. To be honest with you, because this is a purely legal issue, although I did read the documents. I assume you read the record. I did read the records. I did read the record, but, you know, because it's a strictly legal issue. Let's assume he's in home care. Let's assume, okay. Okay. He's kind of a nuisance to deport because all those tubes hooked up and bottles and a special bed. What do you do? He's not subject to removal. He's status. I believe he's a citizen. So he stays. He stays. What happens then? He goes into a hospital for care? Your Honor, I can only speculate. I mean, I presume he's not going to stay at that home if nobody's there to take care of him. So I presume he'd become a ward of the state and he would be taken into care. Thank you. But it's only speculation on my part. Okay. That's what I needed to know. I don't think a response is necessary, but if it is, go ahead and tell us if you think there's an error there, Counsel. He would, yes, I agree. He would have to get an authorization. Again, Your Honor, I'm only speculating. I'm not testifying here. Thank you, Counsel. Maldonado v. Mukasey is submitted. Roby v. American Airlines is submitted. We'll hear Premiano v. Homemedica Osteonics.
judges: Nelson, Kleinfeld, Hawkins